IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                                                              PLAINTIFF

V.                                          3:10CV00169

SHELBY COUNTY HEALTH CARE
CORPORATION d/b/a
REGIONAL MEDICAL CENTER                                                        DEFENDANT

ORDER

Pending are two motions for summary judgment filed by Plaintiff State Farm Automobile Insurance Company ("State Farm") and one motion for summary judgment filed by Defendant Shelby County Health Care Corporation d/b/a Regional Medical Center ("The Med"). For the reasons set forth below, the motions for summary judgment filed by State Farm (Docket # 43 and 46) are DENIED and the motion for summary judgment filed by The Med (Docket # 49) is GRANTED.

I.      Facts

On May 22, 2008, Scott Dawson was injured as a result of an automobile accident in Paragould, Arkansas. Dawson was transported to The Med in Memphis, Tennessee for trauma services. The cost of the medical services provided to Dawson at The Med was $95,762.75. The Med filed a hospital lien for that amount with the Shelby County Circuit Court Clerk pursuant to Tennessee Code Annotated §§ 29-22-101, et seq. on June 20, 2008. (Ex. A to Complaint). The Med sent the hospital lien via registered mail to Dawson at the address given by him, 4190 Rosewind Circle, Memphis, Tennessee 38141.

Dawson's accident was found to be caused by an insured of Plaintiff State Farm. Through a State Farm representative in Arkansas, State Farm settled the claim with Dawson for

the insured's policy limit of $50,000 on August 13, 2008. On December 10, 2009, The Med filed an amended hospital lien in Tennessee naming State Farm Insurance Company with a Tennessee address as a party potentially liable for the charges. State Farm admits that it was provided with a copy of Dawson's hospital bill on August 4, 2008, prior to settlement. State Farm paid no portion of the settlement to The Med. (Ex. B to Complaint).

Thomas Phillips was injured in a car accident with Josh Hopper in Phillips County, Arkansas. Phillips was transported to The Med and received medical treatment from July 21 through July 24, 2007. The Med filed a hospital lien with the Shelby County Circuit Court Clerk on August 3, 2007 in the amount of $59,493.28. (Ex. 2 to Def's Statement of Facts). The Med sent the original hospital lien via registered mail to the address Phillips had given as his residence at 4 PC 306 Road, West Helena, Arkansas 72390. The letter was returned "unclaimed." (Ex. 5 to Def's Statement of Facts). The lien was amended by The Med on August 29, 2007 to include the total amount of $59,976.88 for medical services rendered to Phillips. On October 16, 2007, The Med filed a Second Amended Hospital Lien in Tennessee naming State Farm Insurance Companies in Tennessee. (Ex. C to Amended Complaint).

Phillips received a settlement from State Farm on behalf of its insured, Josh Hopper, for the $25,000 limit of his insurance policy on August 21, 2007. State Farm admits that it was provided a copy of Phillips' hospital bill on August 8, 2007, prior to settlement. (Ex. 6 to Def's Statement of Facts). State Farm paid no portion of the settlement to The Med.

State Farm filed this action seeking a declaration that it is not liable for the Tennessee hospital lien because it was not given notice of the liens and because the liens were not filed in accordance with the Arkansas Medical, Nursing, Hospital, and Ambulance Service Lien Act,

Arkansas Code Annotated §§ 18-46-101 through 117.  The Med filed a counterclaims against State Farm for impairment of its Tennessee hospital liens.  The Med alleges that State Farm received The Med's medical bills for Dawson and Phillips prior to settlement with them and settled the claims without payment of The Med's hospital liens in violation of Tenn. Code Ann. § 29-22-104.

## II.  Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is

> discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### III. Discussion of the Law

#### A. Choice of Law

"A district court sitting in diversity must apply the choice-of-law rules of the state in which it sits." *Lane v. Celadon*, 543 F.3d 1005, 1007 (8th Cir. 2008) (internal citation omitted). Of course, Arkansas choice-of-law principles control in this case because the Court sits in Arkansas. However, it is unclear under Arkansas law whether the Court should apply the Arkansas choice-of-law rules for contract or tort actions to the case. The Eighth Circuit Court of Appeals in *Celadon* predicted the Arkansas Supreme Court would apply tort choice-of-law rules in a diversity case involving subrogation rights arising out of workers compensation benefits paid to an employee. *Id.* at 1007. Although the Eighth Circuit made clear that the prediction applied to "a choice-of-law question involving a dispute over worker's compensation subrogation rights" this Court finds the *Celadon* issue to be analogous to the issue presented in the instant case. *Id.* at 1009. Therefore, the Court will apply the tort choice-of-law rules.

##### 1. Factors

In tort actions, Arkansas courts have moved away from the traditional application of the

*lex loci delicti* rule and have adopted the five Leflar choice-influencing factors ("Leflar Factors"). *Id.* The Leflar Factors include: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *See Celadon*, 543 F.3d at 1010. The Arkansas Supreme Court in *Wallis v. Mrs. Smith's Pie Co.* acknowledged the rationale behind a more flexible approach. *Wallis*, 550 S.W.2d 453 (Ark. 1977). "The clear import of the line of cases adopting the rule of flexibility, . . . is that a forum is free to apply the substantive laws of a state, other than the locus, when it finds that such state has the significant interest in the outcome of those issues." *Id.* at 455 (quoting with approval *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917 (1968)); *accord* Restatement (Second) of Conflict of Laws s 146 (1971).[1] The Arkansas court in *Ganey v. Kawasaki Motors Corporation U.S.A.* stated that courts should consider both the doctrine of *lex loci delicti* and the Leflar Factors. *Ganey v. Kawasaki Motors Corporation U.S.A.*, 234 S.W.3d 838, 847 (Ark. 2006) ("[T]he trial court properly considered both the doctrine of *lex loci delecti* and the five "choice-influencing considerations" promulgated by Professor Leflar. . . .").

2.   **Analysis**

Under the more flexible approach, the Court must first decide which state has the most significant relationship to the parties and the issues. The place of the underlying tort, or the automobile accidents of non-parties Dawson and Phillips, is Arkansas. Plaintiff State Farm is

---

[1] Restatement (Second) of Conflict of Laws at Section 146 provides: "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a *more significant relationship* . . . to the occurrence . . . , in which event the local law of the other state will be applied." (Emphasis added). *See also Wallis,* 550 S.W.2d at 456.

an Illinois corporation that does business in both Arkansas and Tennessee. The Med is located in Tennessee and does business solely in Tennessee. The medical bills of Dawson and Phillips were incurred in Tennessee and the hospital liens were filed in Tennessee.

State Farm argues that the Court should also consider that fact that the Plaintiff's attorneys and claims adjustors involved in this case are located in Arkansas. However, the Court does not find it significant that the Plaintiff's attorneys or claims adjustors are located in Arkansas because State Farm has attorneys and claims adjustors in the majority of states, including Tennessee. Based upon the significant relationship factors, Tennessee has the most significant relationship to the parties and the subject litigation.

The Court also finds that the Leflar Factors support a finding that Tennessee law should be applied. Forcing The Med, or any other regional hospital, to predict which state an insurer would administer the claims of Med patients would certainly result in unpredictable results. Whereas an insurer, such as State Farm, is on notice of the a claimant's medical bills related to a claim because the bills are used to resolve the settlement amount.

The Court finds that maintenance of interstate and international order and advancement of the forum's governmental interests weigh in favor of applying Tennessee law. While Arkansas has an interest in protecting its residents who are victims of torts, Tennessee is the state with a more substantial concern for protecting the viability of its healthcare facility, The Med. The Court finds that Tennessee health care facilities should not, as a general matter, be subjected to the jurisdiction or differing laws of other states.

The third factor, simplification of the judicial task, does not favor either state's law. "The Court is capable of determining, interpreting, and applying the law from either state, thus

neither state law is favored." *Harris v. City of Memphis, Tenn.*, 119 F.Supp.2d 893, 896 (E.D.Ark. 2000). In addition, the fifth Leflar Factor, application of the better rule of law, does not favor Arkansas or Tennessee law. The Court is not in a position to say which state has the better law regarding hospital liens.

After considering the five factors, the Court finds that the first and the second factors, predictability of results and maintenance of interstate order, are the most persuasive and mandate application of Tennessee law in this circumstance. Accordingly, the Court will apply Tennessee law.

Moreover, had the Court found that Arkansas contract choice-of-law rules applied instead of tort, Tennessee law would still apply. Tennessee was the place that Dawson and Phillips engaged in the implied contract to pay for medical services which is the basis of the lien. Tennessee was the place of performance of the contract, the location of the subject matter, the place of incorporation of The Med, and place of business of The Med. *See Crisler v. Unum Ins. Co.*, 233 S.W.3d 658, 660 (Ark. 2006). The application of these factors also weigh heavily in favor of Tennessee law.

### B. Statutes of Limitations

State Farm contends that Arkansas's statute of limitation should apply in this case because the law of the forum generally applies to any procedural issue. The Med disagrees. In support its argument that Tennessee's statute of limitation should apply, The Med cites the Court to *Harris v. City of Memphis, Tenn.*, 119 F.Supp.2d 893, 899 (E.D.Ark. 2000) and *Ganey v. Kawasaki Motors Corporation U.S.A.*.

"The general rule is that where a cause of action does not exist at common law, but is

7

created by the statutes of a state, it only exists in the manner and form and for the length of time prescribed by the statutes of the state which created it." *Harris v. City of Memphis, Tenn.,* 119 F.Supp.2d 893, 899 (E.D.Ark. 2000) (quoting *Earnest v. St. Louis, M. & S.E.R. Co.*, 87 Ark. 65, 67, 112 S.W. 141, 143 (1908)). The *Ganey* court further explained:

> [S]tatutes of limitations are indeed generally considered to be procedural in nature. *See, e.g., Bodiford v. Bess*, 330 Ark. 713, 956 S.W.2d 861 (1997). However, this court has also held that statutes of limitations are to be distinguished from statutes which create a right of action not existing at common law and restrict the time within which action may be brought to enforce the right. *Boatman v. Dawkins*, 294 Ark. 421, 743 S.W.2d 800 (1988). Although the general rule is that a true statute of limitations extinguishes only the right to enforce the remedy and not the substantive right itself, the limitation of time for commencing an action under a statute creating a new right enters into and becomes a part of the right of action itself and is a limitation not only of the remedy but of the right also; the right to recover depends upon the commencement of the action within the time limit set by the statute, and if that period of time is allowed to elapse without the institution of the action, the right of action is gone forever. *Id.* at 424, 743 S.W.2d 800 (citing 51 Am.Jur.2d Limitation of Actions 15). Thus, time limitations which are set out in a statute creating a right—such as the statute of limitations contained within the wrongful-death act—are substantive, not procedural in nature.

*Ganey*, 234 S.W.3d at 846 (quoting *Gomez v. ITT Educational Servs.*, 71 S.W.3d 542, 545 (Ark. 2002)).

The cause of action for impairment of a Tennessee hospital lien does not exist at common law. It was created by the Hospital Lien Act of Tennessee at § 29-22-101, et seq. ("HLA"). Therefore, the statute of limitation for commencing an action for impairment of a Tennessee hospital lien enters into and becomes a part of the right of action itself. Although the statute of limitation is not set out in the HLA, the Court finds that the location of the statute is not the primary consideration when determining whether Arkansas's law should limit the cause of action created by Tennessee statute. The time limitation for bringing an impairment action on an Arkansas hospital lien should not curtail or extend the time available to a plaintiff seeking a remedy for impairment of a Tennessee hospital lien. The statute of limitation which applies to

the Tennessee hospital lien is substantive in nature.  For this reason, the Court finds that the Tennessee statute of limitation applicable to a Tennessee hospital lien must be applied in this case.

Tennessee Code Annotated § 28–3–105 provides that actions for injuries to personal property, real property, "and civil *actions based upon violation of any federal or state statute* creating monetary liability for personal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability" shall be commenced "within three (3) years *from the accruing of the cause of action*."  Tenn. Code Ann. § 28–3–105 (emphasis added).  "The statutory phrase 'from the accruing of the cause of action' found in T.C.A. § 28–3–105 has been construed to mean 'from the time when the plaintiff knew or reasonably should have known that a cause of action existed.'"  *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 821 -822 (Tenn. App. 1995) (quoting *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn. App. 1976)).

State Farm argues that The Med's cause of action for impairing the Phillips hospital lien accrued on August 21, 2007 when State Farm settled its claim with Phillips.  Under this theory, The Med's counterclaim filed on February 1, 2011 is barred by the Tennessee statute of limitation.[2]  The Med contends, however, that its cause of action regarding the Phillips hospital lien did not accrue until July of 2010, when it became aware of State Farm's settlement with Phillips.  Under this theory, the Med's counterclaim for impairment is not barred by the Tennessee statute of limitation because the counterclaim was filed within a year of the accrual of the cause of action.

---

[2] State Farm does not allege that The Med's claim for impairing the Dawson hospital lien is barred by the Tennessee statute of limitation.

9

The Court finds that The Med's counterclaim against State Farm regarding the Phillips hospital lien accrued when The Med knew or reasonably should have known that a cause of action for impairment existed. State Farm argues that The Med should have known of the impairment cause of action on the date of its settlement with Phillips. However, State Farm has not provided the Court with any evidence or case law which indicates that The Med knew or should have known of its 2007 settlement with Phillips in Arkansas. It is undisputed that The Med was not a party to the settlement. The Med did not receive any money from the settlement. Nothing in the record indicates that The Med received any correspondence from Phillips or State Farm which would put them on notice of the settlement. Therefore, the Court finds that The Med did not know and had no reason to know of the impairment of the Phillips hospital lien at the time of the settlement in 2007.

Based upon the record, there is no question of fact as to when The Med discovered the alleged impairment of the Phillips lien. The Med was informed in July 2010 by its lawyers that State Farm had settled the claim related to Phillips. (Ex. A to Def's Statement of Facts). The Court finds that The Med's cause of action against State Farm did not accrue until it discovered the alleged impairment in July 2010 and, therefore, the statute of limitation does not bar The Med's counterclaim as to the Phillips lien.

### C.     Validity of the Liens

In the Complaint, State Farm seeks a declaration that it has no duty to honor the Dawson or Phillips hospital liens filed by The Med in Tennessee. State Farm argues that The Med did not file its hospital liens in Arkansas as required by Ark. Code Ann. § 18-46-101 *et seq.* and that The Med did not provide notice of the lien prior to State Farm's settlement with Dawson and Phillips. The Court has already determined that the Arkansas lien statute does not apply to

this case. Instead, the HLA applies, including the HLA's filing and notice requirements.

> Subsection (a) of Section 29-22-102 requires the hospital to, among other things, set forth in its verified statement the names and addresses of (1) the patient as it appears on the hospital records, (2) the operator of the hospital, and (3) persons, firms, or corporations who "to the best of the claimant's knowledge" are "claimed by such ill or injured person ... to be liable for damages arising from such illness or injuries." T.C.A. § 29-22-102(a). Subsection (b) of the statute in turn requires the hospital to send by registered mail a copy of the lien claim to each person, firm, or corporation "so claimed to be liable" in the verified statement, as well as to the patient's attorney, if the attorney is known or "with reasonable diligence" could be known to the hospital. T.C.A. § 29-22-102(b).

*Shelby County Health Care Corp. v. Baumgartner,* 2011 WL 303249, 12 (Tenn. App.) (quoting Tenn. Code Ann. § 29-22-102).

State Farm argues that The Med's lien against Dawson was not properly perfected and should not be enforced. Specifically, State Farm argues that The Med listed Dawson's address as 4190 Rosewind Circle, Memphis, Tennessee 83141 when his correct address was 407 North 11th Avenue, Paragould, Arkansas 72450. The Med responds that Dawson originally listed his Paragould address in admission documents. (Ex. A to Doc. 60). However, prior to his release Dawson notified The Med that he would be living at the Memphis address after his discharge from the hospital. (Ex. B to Doc. 60). The Court finds that The Med properly listed Dawson's Memphis address on the hospital lien.

Finally, State Farm contends that the liens were not perfected because The Med failed to give State Farm proper notice of the liens. This same argument was presented in *Baumgartner*. The Tennessee Court of Appeal found that the insurer was on constructive notice of the lien after the lien was filed by The Med.

> We find no language in subsection (a) that appears to place a burden on the hospital to engage in fact-finding efforts to ascertain the identity of persons or corporations who may be liable for the patient's injuries. Subsection (b) refers to "reasonable diligence," but only in connection with the name and address of the patient's attorney, in order to

11

send him a copy of the lien. Moreover, the provision in subsection (c) that the filing of the lien is constructive notice to "all persons" indicates the legislature's intent to require a person or entity who settles with the patient for his injuries to check the relevant courthouse for a lien before paying the settlement monies to the patient.

*Shelby County Health Care Corp. v. Baumgartner,* 2011 WL 303249, 12 (Tenn. App.).

The Court finds that State Farm was on constructive notice of the Dawson lien on June 20, 2008 and the Phillips lien on August 3, 2007. The liens were properly perfected by The Med in all respects.

### D.     Damages

The Med seeks damages for impairment of the Dawson and Phillips hospital liens in the amount of one-third of the settlement paid to Dawson and Phillips by State Farm, plus consequential damages and discretionary costs. The Med contends that consequential damages include an award of prejudgment interest at the statutory rate of ten percent per annum. *See* Tenn. Code Ann. § 47-14-123 (2010). After a thorough review of the case law on the issue of damages, the Court agrees.

Dawson was paid $50,000.00 by State Farm. The Med is entitled to one-third of $50,000.00 ($16,666.66) at ten percent per annum for three years ($4,999.99) for a total of $21,666.65. Phillips was paid $25,000.00 by State Farm. The Med is entitled to one-third of $25,000.00 ($8,333.33) at ten percent per annum for four years ($3,333.33) for a total of $11,666.66.

### IV.     Conclusion

For the reasons set forth above, the motions for summary judgment filed by State Farm (Docket # 43 and 46) are DENIED and the motion for summary judgment filed by The Med (Docket # 49) is GRANTED. The Med is awarded a total of $33,333.31 from State Farm as a

result of the impairment of the Dawson and Phillips hospital liens.

IT IS SO ORDERED this 10th day of November, 2011.

_____
James M. Moody
United States District Judge